# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DAVID CHAVIERS, NORMAN** | ) | |
| **CHAVIERS, KELLIE LEDBETTER,** | ) | |
| **and TOM HANCOCK,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **CV-07-0442-CLS** |
| | ) | |
| **MIRABILIS VENTURES, INC., and** | ) | |
| **FRANK AMODEO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT AMODEO'S BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Frank Amodeo ("Amodeo") submits this Brief in Support of his contemporaneously filed Motion to Dismiss for Lack of Personal Jurisdiction:

### INTRODUCTION

This Court cannot, consistent with constitutional Due Process, exercise personal jurisdiction against Amodeo. Amodeo is a resident of Orlando, Florida who has virtually no contacts with Alabama – let alone the quantity and quality of contacts required to support personal jurisdiction in the courts of Alabama. There are three claims against Amodeo in this case, all of which sound in fraud. Two of the fraud claims are state law fraud claims (see Counts II and III, Amended

Complaint). The third claim purports to be a 10b-5 securities fraud claim (see Count I, Amended Complaint). All of the claims against Amodeo allege, in essence, that Amodeo participated in misrepresenting material facts upon which Plaintiffs relied in deciding to sell their interests in The Hancock Group, LLC ("Hancock Group") to defendant Mirabilis Ventures, Inc. ("Mirabilis").

Plaintiffs' Amended Complaint, which relies more on innuendo and salacious hearsay than allegations of material fact, is decidedly vague about Amodeo's connection to this matter. The reason is because Amodeo's connection to the claims in this case is tenuous at best. Even Plaintiffs' Amended Complaint appears to concede that Amodeo was *never* part of the story until *after* the closing of the sale between Mirabilis and Plaintiffs. Though Plaintiffs' claims suffer from significant and fundamental flaws on the merits, Amodeo makes this special appearance for the purpose of raising this Court's threshold lack of personal jurisdiction.

The *in personam* jurisdiction analysis in this case is somewhat atypical, insofar as the Amended Complaint purports to base subject matter jurisdiction on both diversity and a federal question. The two state law fraud claims against Amodeo are based on diversity subject matter jurisdiction, which involves the conventional *in personam* personal jurisdiction test. The 10b-5 securities fraud

claim is based on federal question subject matter jurisdiction, which involves a slightly different analysis. Thus, there are two issues the Court must address:

- Whether the Court can exercise personal jurisdiction over Amodeo based on the diversity subject matter jurisdiction claims; and

- Whether the Court can exercise personal jurisdiction over Amodeo based on the federal question claim.

The answer to both of these issues is "no."

### FACTS

Plaintiffs David Chaviers, Norman Chaviers, Kellie Ledbetter, and Tom Hancock (collectively "Plaintiffs"), each allege they are Alabama residents. (Amended Complaint, ¶¶ 1-4).[1]  Hancock Group is a professional employer organization ("PEO"), also known as an employee leasing company. (Amended Complaint, ¶ 10).  In February 2006, Plaintiffs sold Hancock Group to Mirabilis. (Amended Complaint, ¶ 31).  Amodeo is a Florida resident and is the President and CEO of AQMI Strategy Corporation (a non-party to this lawsuit). (Amodeo Declaration, ¶¶ 2-3).[2]  AQMI is a Nevada corporation with its principal place of business in Orlando, Florida.  (Amodeo Declaration, ¶¶ 3 and 5).  Amodeo has

---

[1]    Plaintiffs do <u>not</u> allege they are citizens of Alabama.  The Eleventh Circuit has held: "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." <u>Taylor v. Appleton</u>, 30 F.3d 1365, 1367 (11th Cir. 1994).

[2]    The Declaration of Frank Amodeo is attached as Exhibit A to the Motion to Dismiss for Lack of Personal Jurisdiction, filed contemporaneously with the submission of this supporting brief.

never lived in Alabama, does not have any clients or business interests in Alabama, does not own or lease any property in Alabama, and (until this lawsuit) has never been a plaintiff or a defendant in a lawsuit in the state or federal courts in Alabama. (Amodeo Declaration, ¶¶ 2, 6, 17 and 18).

Amodeo is neither an employee nor a shareholder of Mirabilis. (Amodeo Declaration, ¶ 4). Even when Amodeo *was* a shareholder, his interest was less than 1%. (Amodeo Declaration, ¶ 4). Amodeo has *never* been an employee of Mirabilis. (Amodeo Declaration, ¶ 4). Amodeo's limited connection with the subject matter of this lawsuit relates to his work as a Senior Strategist for AQMI, an outside consultant retained by Mirabilis for the purpose of assisting with the integration of Hancock Group's book of business into Mirabilis' book of business following the sale. (Amodeo Declaration, ¶¶ 7, 11, 13, and 14). Amodeo's communication with Plaintiffs occurred *after* the sale of Hancock Group closed. (Amodeo Declaration, ¶¶ 7 and 10). Most of Amodeo's communication with Plaintiffs took place over the telephone. (Amodeo Declaration, ¶ 10). Though some of the Plaintiffs visited Amodeo in Orlando, Florida on one or two occasions, Amodeo never traveled to Alabama in connection with his engagement as a consultant to Mirabilis. (Amodeo Declaration, ¶ 10). Amodeo did not participate in the negotiations between Mirabilis and Plaintiffs leading up to the closing of the sale of Hancock Group, and Amodeo was not a signatory to *any* of the documents

or agreements relating to the purchase and sale of Hancock Group. (Amodeo Declaration, ¶ 9).

**ARGUMENT**

## I.    THE COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER AMODEO BASED ON THE DIVERSITY CLAIMS BECAUSE AMODEO HAS INSUFFICIENT CONTACTS WITH ALABAMA.

"In a diversity action, a federal court may assert jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum state, and only if the exercise of jurisdiction comports with the requirements of due process, namely that minimum contacts exist between the defendant and the forum state and that jurisdiction be consistent with traditional notions of fair play and substantial justice." Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1552 (11th Cir. 1993). If a nonresident defendant moves to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2), the "burden of establishing personal jurisdiction over a nonresident defendant is on the plaintiff." Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1263 (N.D. Ala. 2000) (citing Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996)); see also Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

The Alabama Long Arm Statute is considered to be coextensive with the constitutional mandates of the Due Process Clause of the Fourteenth Amendment. See Steel Processors, Inc. v. Sue's Pumps, Inc., 622 So. 2d 910, 911 (Ala. 1993);

Berry v. Salter, 179 F. Supp. 2d 1345, 1348 (M.D. Ala. 2001). In order for courts in Alabama to obtain jurisdiction over a nonresident, the nonresident must have purposefully established minimum contacts with Alabama such that the maintenance of a suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945); see also Mutual Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004). There are two types of personal jurisdiction: general and specific. General personal jurisdiction exists when there are sufficient contacts between the forum and the foreign defendant to constitute "continuous and systematic" contacts with the forum state. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 415-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); The Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d 738, 747 (11th Cir. 2002). "Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action." Madara v. Hall, 916 F.2d at 1516. See also Matthews, 291 F.3d at 747. Neither type of jurisdiction exists over Amodeo in this case.

**A.    General Personal Jurisdiction: Amodeo does not have "continuous and systematic contacts" with Alabama.**

General personal jurisdiction "arises from a party's contacts with the forum state that are unrelated to the litigation." Madara v. Hall, 916 F.2d 1510, 1516 (11th Cir. 1990). The "continuous and systematic" contacts must be such that the

defendant has "purposefully availed itself" of the benefits and protections of the laws of the forum. See Delong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 853 (11th Cir. 1998) (citations omitted).

In Consolidated Development Corp. v. Sherrit, Inc., 216 F.3d 1286 (11th Cir. 2000), the Eleventh Circuit affirmed the District Court's dismissal of certain non-resident defendants for lack of general personal jurisdiction. The plaintiff in Consolidated Development argued that the following facts supported the exercise of general personal jurisdiction: (1) the non-resident defendant had issued bonds in the forum several years prior to the initiation of the lawsuit; (2) in connection with the bond offerings, the non-resident defendants had appointed an agent for service of process in the forum; and (3) the non-resident defendant's products were marketed through a subsidiary in the forum. Id. at 1292. The Eleventh Circuit held that these "limited and sporadic connections with the forum are **not** the sort of general systematic business contacts required to sustain the assertion of general personal jurisdiction." Id. (emphasis added). The court further noted that "merely purchasing materials," "[h]olding meetings," or "[p]lacing advertisements" in a forum are insufficient contacts to support general personal jurisdiction. Id.

In Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408 (1984) — one of the leading general jurisdiction cases — the Supreme Court found that the Texas courts had no general personal jurisdiction over a non-resident

defendant.  The <u>Helicopteros</u> plaintiff argued that the following facts supported exercise of general personal jurisdiction over the non-resident defendant: (1) the party with whom defendant contracted to provide helicopter services was headquartered in Houston; (2) defendant's CEO traveled to Houston to discuss prices, availability, and other details of the contract; (3) between 1970 and 1977, defendant purchased roughly 80% of its helicopter fleet, as well as spare parts and accessories, from a helicopter company in Texas; (4) during the same time period, defendant sent pilots to Texas for training, and for the purpose of ferrying helicopters to South America; (5) defendant sent management and maintenance personnel to Texas for technical consultation; and (6) defendant received more than $5 million of funds drawn on a Texas bank account.  Even under these facts, the Supreme Court found that the defendant's "contacts with the State of Texas were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment," and were not "the kind of continuous and systematic general business contacts" necessary to establish general personal jurisdiction. <u>Helicopteros</u>, 466 U.S. at 416, 419.

Amodeo's sparse contacts with Alabama fall woefully short of this standard. He has never lived in Alabama, does not conduct business in Alabama, and does not own or lease property in Alabama.  (Amodeo Declaration, ¶¶ 2, 17 and 18). Amodeo's company, AQMI, does not advertise in Alabama (or at all for that

matter), and does not have any clients based in Alabama. (Amodeo Declaration, ¶¶ 5 and 6). The last time Amodeo even set foot in Alabama – in 2006 – was to attend the wedding of a family friend. (Amodeo Declaration, ¶ 19). These are, at best, "limited and sporadic connections with the forum" which are "not the sort of general systematic business contacts required to sustain the assertion of general personal jurisdiction." See Consolidated Development, 216 F.3d at 1292.

**B.    Specific Personal Jurisdiction: Amodeo has not purposefully directed his activities at residents of Alabama, nor does the litigation arise from Amodeo's limited activities which involve Alabama.**

Where a forum seeks to assert specific jurisdiction over an out-of-state defendant, the "fair warning" requirement is satisfied only if the defendant has "purposefully directed" [his] activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); see also Madara, 916 F.2d at 1516. Specific jurisdiction only exists when the nonresident defendant has sufficient minimum contacts with the forum state **and** the action relates to or arises from this contact. Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006) (emphasis added); see also Portera v. Winn Dixie, 996 F. Supp. 1418, 1423-24 (M.D. Ala. 1998). In this case, Amodeo lacks the requisite minimum contacts with Alabama.

But even if this hurdle is cleared, specific jurisdiction still fails because Plaintiffs' claims do not "relate to or arise from" these limited contacts.

Amodeo's contacts with the Plaintiffs consist of the following:

- six or fewer telephone calls, all initiated by the Plaintiffs;

- one or two visits in Orlando; and

- one letter from Amodeo to Plaintiffs' counsel in late November 2006.

Even assuming these contacts satisfy the "minimum contacts" part of the specific jurisdiction test, Plaintiffs' claims do not "arise out of or relate to" these contacts. Importantly, Plaintiffs' claims against Mirabilis are fraud claims which allege, in essence, that they somehow "relied" on Amodeo in their decision to sell Hancock Group to Mirabilis. But Amodeo's first interaction with Plaintiffs was late summer 2006 – well *after* the February 2006 closing of the sale between Plaintiffs and Mirabilis. Apparently recognizing this critical problem, Plaintiffs allege that they relied on "untrue statements" or "misleading statements and omissions" in "accepting the Notes and Security Agreement." (Amended Complaint, ¶¶ 38, 53, 58, and Counts I, II, and III). However, the Notes are dated February 21, 2006 (the same date as the closing), and regardless of the date, the Notes are unilateral in nature. (Amended Complaint, Exhibits D, E and F). Mirabilis was promising to pay Plaintiffs – not the other way around. The Security Agreement operated in

much the same way. Mirabilis was giving Plaintiffs a security interest in certain collateral to secure the Notes. (Amended Complaint, Exhibit G).

Moreover, as Amodeo unequivocally testifies, he "did not participate in negotiations" leading up to the closing of the sale of Hancock Group. The Notes and Security Agreement were merely incidental to the sale; they were not separate events. Further, to the extent there were post-closing negotiations between Plaintiffs and Mirabilis relating to the ultimate purchase price for Hancock Group,[3] Plaintiffs appear to have "gotten the better" of Mirabilis since the final purchase price (as reflected by the face of the Notes) was the *maximum* allowable under the range set forth in the February 2006 Purchase Agreement. Thus, there could not have been any detrimental reliance by Plaintiffs on anything Amodeo said or did. For this reason, Plaintiffs cannot credibly argue that their claims "arise out of" Amodeo's *de minimus* contacts with Alabama.

## II.   THIS COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER AMODEO BASED ON PLAINTIFFS' 10b-5 CLAIM.

Personal jurisdiction in federal question cases is admittedly more broad than in diversity cases. However, the exercise of personal jurisdiction in federal question cases must still comport with considerations of "fairness and reasonableness" embedded in the Due Process Clause of the Fifth Amendment.

---

[3]   The Purchase Agreement called for a purchase price between $2.5 and $3.4 million, with the final price to be determined based on year end 2006 financial statements. (Amended Complaint, ¶ 18).

See <u>Republic of Panama v. BCCI Holdings, S.A.</u>, 119 F.3d 935, 945 (11th Cir. 1997)[4] ("We see no reason why these constitutional notions of "fairness" and "reasonableness" should be discarded completely when jurisdiction is asserted under a federal statute rather than a state long-arm statute."). Here, exercise of personal jurisdiction over Amodeo would not comport with these considerations. But even if the Court looks past this issue, personal jurisdiction over Amodeo is still improper because Plaintiffs' Complaint fails to actually state a 10b-5 claim (the purported federal question) against Amodeo and thus cannot serve as the linchpin of personal jurisdiction in this case.

### A.    Exercise of personal jurisdiction over Amodeo would not comport with Fifth Amendment Due Process requirements.

In a case alleging violation of the Securities Exchange Act of 1934, a federal district court has authority to serve defendants nationwide, but this grant of power is limited "by constraints of constitutional due process." <u>Busch v. Buchman, Buchman & O'Brien</u>, 11 F.3d 1255, 1257 (5th Cir. 1994). "In order to evaluate whether the Fifth Amendment requirements of fairness and reasonableness have been satisfied, courts should balance the burdens imposed on the individual defendant against the federal interests involved in the litigation." <u>Republic of Panama</u>, 119 F.3d at 946. Here, the burdens imposed on Amodeo outweigh the

---

[4]    "It is well established that when, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth Amendment." <u>Id.</u> at 942.

federal interests in this litigation, particularly considering the suspect nature of Plaintiffs' 10b-5 claim against Amodeo (addressed *supra* at part I. B. and *infra* at part II. B.).[5]

In Republic of Panama, the Eleventh Circuit went into an in-depth discussion of federal court personal jurisdiction over defendants based upon federal statutes which authorize nationwide service of process. Although the court in that case ultimately determined that personal jurisdiction was proper over the defendants in Florida federal court (under highly distinguishable facts), the Eleventh Circuit was clear that personal jurisdiction under federal statutes with nationwide service of process is not to be granted *carte blanche*. Where a defendant demonstrates "constitutionally significant inconvenience," a court cannot exercise personal jurisdiction. Republic of Panama, 119 F.3d at 946. The Republic of Panama court noted: "In determining whether the defendant has met his burden of establishing constitutionally significant inconvenience, courts should consider the factors used in determining fairness under the Fourteenth Amendment." Id.

---

[5]    Though Plaintiffs plead this case in terms of deep-reaching and widespread fraud, this is really a breach of contract case between Mirabilis and Plaintiffs – litigation which carries insignificant, if any, federal interest.

In Peay v. Bellsouth Medical Assistance Plan, 205 F.3d 1206, 1212 (10th Cir. 2000), the Tenth Circuit listed several factors to be utilized in evaluating whether a defendant has met his burden of establishing constitutionally significant inconvenience:

> 1) the extent of the defendant's contacts with the place where the action was filed;
>
> 2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including a) the nature and extent and interstate character of the defendant's business, b) the defendant's access to counsel, and c) the distance from the defendant to the place where the action was brought;
>
> 3) judicial economy;
>
> 4) the probable situs of the discovery proceedings and the extent to which discovery proceedings will take place outside the state of the defendant's residence or place of business; and
>
> 5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

The above-listed factors, when applied to the facts of the case at hand, indicate personal jurisdiction over Amodeo would be a constitutionally significant inconvenience.  First, Amodeo's contacts with this forum are peripheral and tenuous at best.  They consist of less than six telephone calls, all initiated by the Plaintiffs, and one letter - none of which form the basis of Plaintiffs' Complaint. Second, the distance between Orlando, Florida and Huntsville, Alabama is roughly

636 miles, or 9.5 hours by vehicle. When coupled with the fact that Amodeo is the owner of a business in Orlando, this makes defense of an action in this forum extremely unfair and inconvenient. Third, judicial economy would be no better served in the present forum than in Florida, especially considering that Amodeo's connection with this case is so tenuous. Fourth, any discovery relating to either Mirabilis or Amodeo will occur in Florida. Fifth, as is discussed part II. B. *supra*, Amodeo was not involved in any regulated activity with regard to this transaction. The 10b-5 securities fraud claim against Amodeo is merely a shell attempt to manufacture personal jurisdiction over Amodeo in Alabama where it otherwise does not exist. The bottom line is that haling Mr. Amodeo into federal court in Alabama based on a few telephone calls initiated by the Plaintiffs and a single letter, when taken in the context that Amodeo's involvement did not have anything to do with the sale complained of, would be constitutionally unfair and grievously burdensome.[6]

---

[6]    See In re Chase & Sanborn Corp., 835 F.2d 1341, 1345 (11th Cir. 1988) (indicating that the Fifth Amendment inquiry focuses on "fairness and reasonableness" of requiring a defendant to litigate in a particular forum) (reversed on other grounds); Handley v. Indiana & Michigan Electric Co., 732 F.2d 1265, 1272 (6th Cir. 1984) (stating where the court is sitting in a federal question case, the purpose of minimum contacts is to protect the defendant against the burdens of litigating in a distant or inconvenient forum); Horne v. Adolph Coors Co., 684 F.2d 255, 259 (3d Cir. 1982) (stating the only constitutional limitation on Congressional power to provide a forum is whatever fairness is required by Fifth Amendment due process); Lone Star Package Car Co. v. Baltimore & O.R. Co., 212 F.2d 147, 155 (5th Cir. 1954) (stating when cases are governed by federal law, the question of whether they are to be tried in one locality or another is to be tested by basic principles of fairness). Other sources have noted as well that there must be a fairness evaluation associated with personal jurisdiction in these types of cases: CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, *Jurisdiction* § 1067.1 at 328-29

### B. Personal Jurisdiction Against Amodeo Cannot be Based on the 10b-5 Claim Because the Claim Would Fail Under a Rule 12(b)(6) Challenge

When an issue concerning an element of a cause of action is also an element of jurisdiction, jurisdiction must be exercised except "if the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous." Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773, 90 L. Ed. 939 (1946). In this case, Plaintiffs' 10b-5 claim against Amodeo would fail under a Rule 12(b)(6) challenge because the purchase and sale of the Hancock Group, LLC was not the purchase and sale of a "security" as required under the 1934 Act. Additionally, Plaintiffs' 10b-5 against Amodeo would fail because Plaintiffs did not rely on anything Amodeo said or did in making their decision to sell the membership interests in Hancock Group.

---

(stating if due process is to have any application at all in federal cases – and the Fifth Amendment requires that it does – it seems impossible that Congress could empower a plaintiff to force a defendant to litigate any claim, no matter how trifling, in whatever forum the plaintiff chooses, regardless of the burden on the defendant); Maryellen Fullerton, *Constitutional Limits on Nationwide Personal Jurisdiction in the Federal Courts*, 79 Nw. U.L. Rev. 1, 38 (1984) (stating the due process clause of the Fifth Amendment should be interpreted to limit the exercise of personal jurisdiction over defendant for whom the place of trial is unreasonably burdensome); Robert A. Lusardi, *Nationwide Service of Process: Due Process Limitations on the Power of the Sovereign*, 33 Vill. L. Rev. 1, 32-38 (1988) (concluding nationwide service of process should be limited by a due process requirement of fairness to the defendant).

**1.    The purchase and sale of Hancock Group, LLC was not the purchase and sale of a "security" under the 1934 Act.**

Section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78c(a)(10), states that a "security" is:

> any note, stock, treasury stock, security future, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

The Purchase agreement between Plaintiffs and Mirabilis was for the sale of 100% of the outstanding member interests in Hancock Group, LLC and its related

companies. The specific issue before the Court, then, is whether these LLC member interests are "securities" under the 1934 Act.

"LLC membership interests are not 'securities' unless they meet the criteria of an 'investment contract' as set forth in Securities and Exchange Commission v. W.J. Howey Co., 328 U.S. 293, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946)." Keith v. Black Diamond Advisors, Inc., 48 F. Supp. 2d 326 (S.D.N.Y. 1999). An investment contract is a "security" for the purposes of the 1934 Act only if it is: (1) an investment in a common venture; (2) premised on a reasonable expectation of profits; (3) to be derived from the entrepreneurial or managerial efforts of others. Howey at 301, 66, S. Ct. 1100. Plaintiffs' sale of the member interests in Hancock Group does not meet this test.

A particularly instructive case, which specifically applies the Howey test in determining whether 100% interest in an LLC is a "security" is Great Lakes Chemical Corp. v. Monsanto Co., 96 F. Supp. 2d 376 (D.Del. 2000). In Great Lakes, sellers Monsanto and STI sold 100% of its member interests in an LLC to Great Lakes. Id. at 377. Great Lakes sued the sellers for securities fraud, and sellers moved to dismiss in part arguing that the interests in the LLC sold were not "securities." Id. The Court noted that "the primary goal of the securities laws is to regulate investments, and not commercial ventures." Id. at 387. While Great Lakes contended that the interests in the LLC should be treated as stock, the Court

determined that LLC interests, though "'stock-like' in nature, are not traditional stock." Id.  The Court stated that it must instead determine whether the sale of the LLC was "essentially an investment transaction, in which case the securities laws apply, or...a commercial transaction, in which case they do not." Id. at 389.  The Court applied the Howey test, and stated that: 1) because Great Lakes purchased 100% of the interests of the LLC, rather than "pool[ing] its contributions with those of other investors" and 2) because neither Monsanto nor STI retained any interest in the LLC after the sale, the second "common enterprise" prong of Howey could not be satisfied. Id.  In addition, the Court determined that the third prong of Howey, requiring that profits come solely from the efforts of others, was also left unsatisfied because Great Lakes had the power to control the LLC through its authority to remove managers and to dissolve the LLC. Id. at 390-91.

Great Lakes is on "all fours" with the case at bar.  Because Mirabilis purchase 100% of the membership interests in Hancock Group, there is no "pooling" of contributions or "common venture."  Plaintiffs could not have had *any* expectation of profits, since they were selling Hancock Group within a specified range (and, ultimately, at the ceiling of that range).  Further, neither Mirabilis nor Plaintiffs were relying on the "managerial efforts of others" – Mirabilis owned and controlled Hancock Group, though Plaintiffs stayed on as

employees.  The membership interests in Hancock Group are not "securities" and cannot form the basis of a 10b-5 claim.

> **2.    Plaintiffs could not have relied upon anything Amodeo said or did in connection with their decision to sell Hancock Group.**

To sustain their 10b-5 claim against Amodeo, Plaintiffs must show that Amodeo "in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on [such action] caused injury to the plaintiff." Ganino v. Citizens Utilities Co., 228 F.3d 154, 161 (2d Cir. 2000).  Plaintiffs must establish that the alleged misrepresentation or omission *actually induced them* to act differently than they otherwise would have in a pertinent investment decision. See Myzel v. Fields, 386 F.2d 718, 735 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S. Ct. 1043, 19 L. Ed. 2d 1143 (1968).

To the extent Plaintiffs' decision to sell the membership interests in Hancock Group can be construed as an "investment decision," that decision could not have been "induced" by anything Amodeo said or did.  The closing of the sale of Hancock Group occurred in February 2006 – well before Plaintiffs' had any contact with Amodeo. (Amodeo Declaration, ¶ 7).  Amodeo did not participate in any of the negotiations leading up to the closing of the sale of Hancock Group. (Amodeo Declaration ¶ 9).  Moreover, the limited contact Amodeo had with

Plaintiffs – which first began in late summer 2006 – was in their capacity as employees of a Mirabilis affiliate (which Hancock Group became in February 2006), not in their capacity as buyers or sellers of any alleged "security." (Amodeo Declaration, ¶¶ 7, 10 and 13).

An investor "who makes his own investment decision and does not rely upon a defendant for advice when making those decisions is barred from asserting that he presumably relied upon a particular omission." Cavalier Carpets, Inc v. Caylor, 746 F.2d 749 (11th Cir. 1984). See also St. Louis Union Trust Co. v. Merrill Lynch, 562 F.2d 1040 (8th Cir. 1977) (wherein executors of the estate of a former officer and stockholder sold stock prior to company's public offering and brought a 10b-5 action against company on grounds that it artificially inflated the price of its stock in public offering, the Court held that because plaintiffs were contractually bound to sell the stock based upon decedent's Certificate of Incorporation agreement and had made the decision to sell the stock months before the substantive violation by the company, there could not have been any reliance, and the chain of causation between the company's fraud and executors' decision to sell was substantively broken).

## CONCLUSION

This Court cannot exercise personal jurisdiction over Amodeo consistent with the Due Process Clauses in the Fifth and Fourteenth Amendments. For all of

the foregoing reasons, Amodeo respectfully requests that the Court dismiss the Complaint and Amended Complaint against him.

Respectfully submitted,

Dated: May 4ᵗʰ, 2007.

/s _____

Charles A. Burkhart
Eric B. Langley
David Burkholder
Attorneys for Defendants
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5689
E-mail: cburkhart@balch.com
elangley@balch.com
dburkholder@balch.com

**Counsel for Defendants**

Of Counsel for Defendants:

Mark J. Bernet, Esq.
200 South Orange Avenue, Suite 2800
Orlando, FL 32801
Telephone: (407) 517-7779
Facsimile: (407) 454-5102
mbernet@mirabilisventures.com
Florida Bar No. 606359

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

|  |  |  |
|---|---|---|
| DAVID CHAVIERS, NORMAN CHAVIERS, KELLIE LEDBETTER, and TOM HANCOCK, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | CV-07-0442-CLS |
| MIRABILIS VENTURES, INC., and FRANK AMODEO, et al., | ) ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Phillip W. Williams, Jr. / phwill@sbswlegal.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

\

John M. Gross
TAYLOR, BUSCH, SLIPAKOFF & DUMA, LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone: (770) 434-6868
Facsimile: (770) 434-7376

Counsel for Plaintiffs

Mark J. Bernet, Esq.
200 South Orange Avenue, Suite 2800
Orlando, FL  32801
Telephone: (407) 517-7779
Facsimile: (407) 454-5102
mbernet@mirabilisventures.com
Florida Bar No. 606359

/s _____

Charles A. Burkhart
Eric B. Langley
David Burkholder
Attorneys for Defendants
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5689
E-mail: cburkhart@balch.com
        elangley@balch.com
        dburkholder@balch.com

**Counsel for Defendants**