IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

DAVID G. CHAVIERS, NORMAN )
CHAVIERS, KELLIE LEDBETTER, )
and TOM HANCOCK, )
)
)
Plaintiffs, )
)
)
v. ) CIVIL ACTION NO.
) CV-07-0442-CLS
)
)
MIRABILIS VENTURES, INC., and )
FRANK AMODEO, et al., )
)
)
)
Defendants. )

### PLAINTIFFS' REPLY TO "DEFENDANT AMODEO'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE DECLARATION OF FRANK AMODEO AND IN OPPOSITION TO AMODEO MOTION TO DISMISS"

Plaintiffs David Chaviers, Norman Chaviers, Kellie Ledbetter and Tom Hancock (collectively, "Plaintiffs") hereby submit this Reply to Defendant Frank Amodeo's ("Amodeo") Response to Plaintiffs' Motion to Strike the Declaration of Frank Amodeo and in Opposition to Mr. Amodeo's Motion to Dismiss. In support of this Brief, Plaintiffs submit a Declaration of Ramsey A. Knowles and the exhibit thereto.

In his Response, Amodeo has failed to address many of the substantive arguments Plaintiffs have advanced in favor of a finding that this Court has personal jurisdiction over Amodeo. For example, Amodeo failed to even address Calder v. Jones, 465 U.S. 783, 789, 104 S. Ct. 1482, 1486-87 (1984). Instead, Amodeo tellingly has chosen 1) to furiously but inadequately defend the many inaccuracies in his original Declaration; and 2) to mischaracterize Plaintiffs' arguments.

Because this Brief serves as a Reply in further support of Plaintiffs' Motion to Strike, and not as a surreply to Amodeo's Reply to Plaintiffs' Response to Amodeo's Motion to Dismiss, Plaintiffs limit this submission accordingly. In spite of his belated attempts to make his initial representations more truthful, the result is clear: Amodeo misrepresented, by omission and commission, the facts purportedly supporting his Motion to Dismiss, and as a result, his Declaration and Supplemental Declaration should be stricken.

## I. ARGUMENT AND CITATION OF AUTHORITY

Contrary to Amodeo's assertions, Plaintiffs have not begun a mudslinging campaign against Amodeo. Plaintiffs *have* begun a meritorious suit against him. Amodeo chose to submit to this Court a sworn Declaration which was riddled with misrepresentations, and Amodeo should not be heard to complain of the consequences of such conduct. Plaintiffs have merely identified factual

inaccuracies in Amodeo's Declaration because, without this inaccurate Declaration, there is no factual support for Amodeo's Motion to Dismiss for lack of personal jurisdiction. The Declaration contains so many falsehoods that the Court should strike it, and as a result, Amodeo's Motion to Dismiss must be denied.[1] Furthermore, the Court should strike Amodeo's Supplemental Declaration because it is merely a poor attempt to explain away falsehoods in Amodeo's initial filings.

### A. Amodeo's Response and Supplemental Declaration Fail to Cure the Infirmities in His Original Filings.

> I called Plaintiffs in response to their previous inquires or questions with regard to integration of the PEO business of Mirabilis. This is what I meant in my original declaration when I said the telephone calls were "initiated by the Plaintiffs."

(Supplemental Declaration of Frank L. Amodeo ("Amodeo Supp. Decl.") ¶ 10.) This admission by Amodeo is a microcosm of Amodeo's overall response to incontrovertible evidence of his falsehoods: recasting these falsehoods to appear less egregious, and then lashing out at Plaintiffs. However, Amodeo's initial Declaration is now a matter of public record, and no amount of ex post facto excuses can change the fact that Amodeo initially sought to mislead this Court.

---

[1] This Brief is only a Reply to Amodeo's Response to Plaintiffs' Motion to Strike, and Plaintiffs remind the Court that Plaintiffs' Brief in Opposition to Amodeo's Motion to Dismiss provides other additional reasons to deny that Motion.

In addition, Amodeo's Response and Supplemental Declaration are themselves fraught with inconsistencies. For example, Amodeo claims that his relationship with Mirabilis is irrelevant, while also arguing that he could not have been negotiating for Mirabilis because he was in a position similar to the Plaintiffs with regard to Mirabilis. (Compare Amodeo Resp. at p. 7, with Amodeo Resp. at p. 4, and Amodeo Supp. Decl. ¶ 6.) Furthermore, Amodeo vigorously points out that supporting affidavits should only contain facts when attempting to assail Plaintiffs, but he then espouses in his own Supplemental Declaration (and in fact bases his entire argument on) the idea that some purported legal meaning of the word "initiate" explains away his original factual assertion that he had never contacted the State of Alabama. (Compare Amodeo Resp. at pp. 5, 8-10, with Amodeo Resp. at pp. 5-6, and Amodeo Supp. Decl. ¶ 10.)

As the following short discussion demonstrates, it is Amodeo who seeks cover in "hyper-technical" interpretations and purely diversionary "mudslinging" now that his initial efforts have been debunked. (Amodeo Resp. at pp. 2, 5.)

**1. Amodeo negotiated with Plaintiffs.**

Notwithstanding Amodeo's arguments to the contrary, Plaintiffs had the option of refusing to accept a promissory note and security agreement from Mirabilis on terms dictated solely by Mirabilis, and Amodeo made express representations intended to quell Plaintiffs' fears and to induce Plaintiffs to move

forward with the transaction. Furthermore, Plaintiffs have not conceded that Amodeo had no role in inducing Plaintiffs to sign the Purchase and Sale Agreement, but establishing this fact would require a significant amount of discovery and is not necessary to the personal jurisdiction analysis.

Plaintiffs at all times had a right to terminate the Purchase and Sale Agreement and either sue for violation of its terms or defend a potential suit by Mirabilis.

> A sufficient consideration for a contract may consist of refraining from bringing a suit; the actual forbearance, or the promise to forbear, to prosecute a claim on which one has a right to sue is universally held to be a sufficient consideration. It is not material that the party making the promise, in consideration of an agreement to forbear, should have a direct interest in the suit to be forborne, or be directly benefited by the delay.

Air Eng'rs, Inc. v. Reese, 283 Ala. 355, 359, 217 So. 2d 66, 71 (1968). It logically follows that the forbearance of exercising a legal remedy can serve as the behavior induced by a fraudulent misrepresentation.

Plaintiffs had concerns about Mirabilis, and Amodeo's own words belie his argument that Plaintiffs had no option but to accept, without question, the promissory note and security agreement following Amodeo's admitted involvement. In the telephone conversation between Amodeo and Chaviers on December 13, 2006, Chaviers expressed concern about the management of Mirabilis:

> You know, we had everything that we own invested in this company. So when we sold, you know, and it looks like, well, you got a million up front, well, by the time we distributed to debts and what have you, we had enough to basically last us until March when the payments started coming in. And that was our nest egg. And when you're sitting in our shoes, seeing the way this company is being done, especially with people like Allen Archer, I mean, that guy has no business even being in the business world.

(Chaviers Decl., Ex. E at pp. 11-12; see also Chaviers Decl., Ex. D.). Amodeo responded by indicating that he would have a conversation with Mirabilis management:

> [I]t sounds like he is—just from some of the snide comments that I've overheard with Jay, it's so unprofessional that I want—I want—I want to say something.
> . . .
> I have every intention of having that conversation.

(Chaviers Decl., Ex. E at p. 12; see also Chaviers Decl., Ex. D.) In addition, in response to Chaviers' concerns about funds requested by a member of Mirabilis management, Amodeo volunteers to obtain reports and "mak[e] sure the information is accurate on this end":

> I'll tell you one of the things I'll do and we can chat about it tomorrow. I will—I will get from them a report today. I would like to verify the report with you, if I could, let me call and make sure what I'm getting is true.
> . . .
> I'll just give you a call and spot check it, in terms of making sure the information is accurate on this end.

(Chaviers Decl., Ex. E at pp. 13-14; see also Chaviers Decl., Ex. D.) In addition, Amodeo proposed arrangements for the promissory note and security agreement,

-6-

and he represented that he would insist upon these terms and report back to Chaviers on the outcome of Mirabilis' actions. (Chaviers Decl., Ex. E at pp. 2, 4-6, 14; see also Chaviers Decl., Ex. D.)

If Plaintiffs were indeed bound to accept whatever terms Mirabilis saw fit to provide after signing the Purchase and Sale Agreement, there would have been no need for Amodeo to answer Plaintiffs' questions and act as intermediary between Plaintiffs and Mirabilis. Amodeo's statements in the recordings reveal the actual state of events: 1) Plaintiffs were having second thoughts prior to the execution of the promissory note and security agreement; 2) Amodeo made representations to address Plaintiffs' concerns with the intention of inducing Plaintiffs into moving forward with the transaction; and 3) Plaintiffs did in fact move forward with the transaction based on these representations from Amodeo. Because Amodeo was a Mirabilis affiliate, as discussed more fully in the following subsection, these actions by Amodeo were indeed negotiations on behalf of Mirabilis.

### 2. Amodeo is affiliated with Mirabilis.

Amodeo attempts to explain away all his negotiations by claiming that he occupied some form of unexercised, optional, independent contractor status with Mirabilis. This is a fine line upon which Amodeo attempts to walk—he claims to be an employee of a Mirabilis subsidiary who could, but did not, provide support for Mirabilis, but also claims to have been merely a seller occupying the same

position as Plaintiffs with regard to Mirabilis. (Compare Amodeo Resp. at pp. 6-7, with Amodeo Resp. at p. 4, and Amodeo Supp. Decl. ¶¶ 7-8.) Again, Amodeo's own words indicate that the actual relationship between the two Defendants was much different than he would now have us believe.

Currently, Amodeo's asserts that he was "one of the independent consultants available for potential engagement by Mirabilis or Nexia." (Amodeo Resp. at p. 6; see also Amodeo Supp. Decl. ¶ 13.) However, Amodeo fails to address his long speech in the DVD video that Mirabilis provided to Plaintiffs, in which Amodeo constantly uses the terms "we," "our," and "us" when referring to Mirabilis, shares his vision for the future of Mirabilis, and envisions a world in which Mirabilis—referred to in the first-person plural—is omnipresent. (Chaviers Decl., Ex. B.) Amodeo's own words—spoken, recorded, celebrated and distributed by Mirabilis long before Amodeo's conversations with Plaintiffs—attest, to, proclaim and confirm his affiliation with Mirabilis. Nor are Amodeo's own words the only publicly available statement of affiliation between Amodeo and Mirabilis. For example, newspaper reports continue to refer to Amodeo as a "founder" of Mirabilis. In addition, it is almost beyond belief that Amodeo continues to deny his involvement with Mirabilis in light of the near-universal understanding that Amodeo is the founder and primary principal of Mirabilis. (See, e.g., Exhibit A to Declaration of Ramsey Knowles ("Mirabilis [is] a risk-capital firm founded by

Orlando investor Frank L. Amodeo in 2004. . . . Amodeo has served as the equity firm's chief strategist."))[2]

Furthermore, Amodeo assured Chaviers that Amodeo retained a role within Mirabilis:

> MR. CHAVIERS:
> . . .
> From what I read, apparently you have already sold your interest.
>
> MR. AMODEO: It's one percent interest. The bigger interest I have is tied to the insurance contract.
>
> MR. CHAVIERS: Okay.
>
> MR. AMODEO: The one percent interest I sold, that helped a lot because now I'm not biased anymore. Some of the issues came up as to whether, you know—
>
> MR. CHAVIERS: Well, according—
>
> MR. AMODEO: —how independent my advice was.
>
> MR. CHAVIERS: According to what I read it says that: "Frank Amodeo's stake in Mirabilis was recently bought by Mirabilis so he is no longer an investor in the company."
>
> MR. AMODEO: That is correct. That's true.

---

[2] While such a newspaper report, standing alone, does not constitute admissible evidence of Amodeo's relationship with Mirabilis, Plaintiffs submit that the report is relevant to a threshold analysis of the level of credibility to which Amodeo's Declarations are otherwise entitled.

MR. CHAVIERS: Okay.

MR. AMODEO: That part -- that part is completely, 100 percent true. But the other part that isn't in the article because it's really nobody's business is that the insurance contracts that underwrite this still require my personal signature, my personal – I'm the personal surety on them. I've agreed to indemnify the insurance company for losses. And I'm going to have to continue that in the next year.

MR. CHAVIERS: Okay.

MR. AMODEO: That's not going to change for a year because the insurance company just doesn't let -- you just don't get off this once you're on it.

MR. CHAVIERS: Okay.

MR. AMODEO: I'm stuck on it whether I like it or not. And what I wanted to do is get a fair resolution so I have some comfort that it will be handled properly and at the end of next year, this will be worth a lot of money. And then it can either be resold and everybody paid off, or it's so far into the stream of operations that there's no more stress about the payment stream. And from my perspective, I don't want any stress about having to worry about, you know, one of the insurance carriers coming back and knocking on my door for 5 million dollars uncovered tail in three years.

(Chaviers Decl. Ex. E at pp. 9-11; see also Chaviers Decl., Ex. D.) As Amodeo states, "Some of the issues came up as to . . . how independent my advice was," but apparently, Amodeo now maintains that this conflict of interest completely disappeared upon the sale of his one percent interest notwithstanding his "bigger interest."

Amodeo relies heavily upon misdirection and technical jargon—"outside consultant as part of its PEO consolidation strategy," "working to integrate all of

its PEO business for the purposes of achieving uniformity and economy of scale," "independent consultants with subject-matter experience relevant to any given project"—but the following truths are undeniable: 1) Plaintiffs saw Amodeo in the DVD video and his name on the roster of talent, which created the perception that Amodeo was at least a Mirabilis employee—if not the founder and primary principal—despite what Amodeo now claims to be the actual state of the relationship between the two; 2) Plaintiffs had doubts about Mirabilis and the transaction they had entered into with Mirabilis; 3) Amodeo reached out and called the State of Alabama to assuage those fears, did nothing to apprise Plaintiffs of his alleged non-affiliation with Mirabilis, and in fact reassured Chaviers of his role within Mirabilis; and 4) Plaintiffs relied on Amodeo's representations.

### 3. Amodeo "initiated" calls to Alabama.

In his original Affidavit, Amodeo swore that all of his communications with plaintiffs occurred by phone, and that "All of the telephone calls were initiated by Plaintiffs." (Declaration of Frank L. Amodeo ¶ 10.) As Chaviers' Declaration demonstrated, contrary to Mr. Amodeo's testimony, Mr. Amodeo in fact "initiated" many of those calls by placing them himself. (Chaviers Decl.) Amodeo has now averred in his Supplemental Declaration that what he "meant" to say in his initial sworn statement was that he never called Alabama except to answer questions previously posed by Plaintiffs. (Amodeo Supp. Decl. ¶ 10.)

The Court need only look to the transcript of the phone conversation between Amodeo and Chaviers on December 13, 2006, to recognize that this position is no more accurate than Amodeo's initial averments. Furthermore, to the extent that some legal definition of "initiate" has bearing on the factual accuracy of Amodeo's statement, the case law cited by Amodeo makes no distinction based on whether or not an out-of-state party made <u>unsolicited</u> calls into the forum.

In his December 13, 2006 call to Alabama, Amodeo says nothing of previous inquiries or questions to which he was calling in response: "I am giving you a call to . . . give you the status from—as I know it today, . . . to see what you think about it." (Chaviers Decl., Ex. E at p. 2; <u>see also</u> Chaviers Decl., Ex. D.) Amodeo then goes on to discuss his proposals for how to handle the finalization of the transaction between Mirabilis and Plaintiffs without any mention of outstanding questions or inquires from Plaintiffs. Furthermore, even if Amodeo called to answer Chaviers' questions, this demonstrates the factual inaccuracy discussed above—that Amodeo was actively negotiating on behalf of Mirabilis to ensure that the transaction with Plaintiffs was finalized.

Amodeo cites two cases in his argument for a more onerous definition of "initiated," but neither of these cases deals with the subject of <u>why</u> a party has called into the forum (e.g., in response to questions or inquiries). Furthermore, the cases are completely off point 1) because both are based on the respective long-

arm statutes of the forums in question, which are very different from Alabama's long-arm statute, and 2) because neither court reached the issue of what impact an intentional tort has on the constitutional due process analysis, which provides the only limitation on personal jurisdiction in Alabama under Alabama's long-arm statute. Compare Fiedler v. First City Nat'l Bank of Houston, 807 F.2d 315, 317 (2d Cir. 1986), and FC Inv. Group LC v. IFX Mkts., Ltd., 479 F. Supp. 2d 30, 39 (D.D.C. 2007), with Martin v. Robbins, 628 So. 2d 614, 616-17 (Ala. 1993) (citing Ala. R. Civ. Pro. 4.2(a)(2)(I)) (holding that Alabama allows personal jurisdiction "to the permissible limits of due process"),[3] and Calder v. Jones, 465 U.S. 783, 789, 104 S. Ct. 1482, 1486-87 (1984) (holding that intentional torts more easily meet due process requirements).

Amodeo cannot hide behind excessive literalism and explication. In his first Declaration, Amodeo flatly stated: "All telephone calls were initiated by Plaintiffs," giving the impression that Amodeo had never even placed a telephone call into the State of Alabama. Now Amodeo explains that "initiate" does not

---

[3] Ex parte Reindel, No. 1051021, 2007 WL 625835, at *3 (Ala. Mar. 2, 2007) ("[T]he ultimate question under Rule 4.2(b) is the same as under former Rule 4.2(a)(2)(I), namely, whether the out-of-state defendants have "some minimum contacts with this state [that] ... it is fair and reasonable to require [them] to come to this state to defend an action.").

mean "initiate." Even if his explanation is to be believed, the initial falsehood is fatal for both of Amodeo's Declarations, which should be stricken from the record.

**B. Chaviers' Declaration Is Sufficient and Factual.**

Amodeo makes much of Plaintiff David Chaviers' ("Chaviers") use of the word "understand" in Chaviers' Declaration, but in this instance, Chaviers' reasonable understandings are facts relevant to the determination of this Court's jurisdiction and Defendants' liability. Chaviers' understanding of the relationship and communications between Mirabilis and Amodeo and their respective agents was perpetuated by Defendants and used as a tool in their fraudulent scheme.

For example, Amodeo criticizes the use of the word "understand" in paragraph 10 of the Chaviers Declaration. In this paragraph, Chaviers is describing the very damaging DVD video presented to Plaintiffs by Mirabilis at the time of the closing of the Purchase and Sale Agreement. Chaviers states: "The video on the DVD begins with a short presentation from someone who is apparently a senior officer of Mirabilis to a gathering of persons apparently affiliated with or employed by Mirabilis. That is certainly what we **understood** it to be from the labels and from the speakers' remarks." (Chaviers Decl. ¶ 10.) It is perfectly proper for Chaviers to testify as to his "understanding" of the material on the DVD. Without discovery and the opportunity to gain knowledge of Mirabilis' inner workings, it is of course impossible to determine whether the person

introducing Amodeo on the video is actually a senior officer of Mirabilis, or whether Amodeo was actually addressing a group of persons affiliated with or employed by Mirabilis, but the Court need only view the first five minutes of the video and review the labeling on the DVD to see that any reasonable observer would come hold these same understandings. (Chaviers Decl. ¶ 10, Exs. B, C.)[4]

Chaviers can only testify as to what he reasonably "understood" from the context in which the DVD was given to him and from his viewing of the DVD itself. In fact, in confining his testimony to what he "understood" of such matters, Chaviers is only doing as he ought: testifying, carefully and truthfully, about what he does and does not know. The parties would not now be briefing this matter if Mr. Amodeo had done the same.

Similarly, it was impossible for Plaintiffs to have actually known whether or not Mr. Stollenwork was consulting with Amodeo outside of Plaintiffs' presence, but the relevant fact in this case is that Stollenwork said he was doing so, and

---

[4] In addition, it would be <u>even more damaging</u> to Defendants if Chaviers' reasonable understandings were in fact incorrect—if the gentleman in the DVD video were *not* a Mirabilis senior officer or were Amodeo *not* addressing Mirabilis affiliates, these facts would only serve as further demonstration of the fact that Defendants intentionally defrauded Plaintiffs.

Chaviers understood that these consultations occurred based on the representations of Stollenwork and Amodeo.

In the end, without yet having had the opportunity to conduct discovery, Plaintiffs cannot be expected to have knowledge of the documents and understandings governing the relationship between Amodeo and Mirabilis, or between Mirabilis and those persons who held themselves out as its officers or its management "team." Plaintiffs' only indication of Amodeo's role in Mirabilis—the understanding that is relevant to Plaintiffs' allegations of fraud—was the result of representations by Defendants and their agents.

Thus, Amodeo's argument that Chaviers' Declaration, which Amodeo has not moved to strike, is somehow improper is more of the same strategy to divert the Court's attention from the legal realities by mischaracterizing the facts and the purposes of Plaintiffs' arguments and assertions.

### III. CONCLUSION

When read without the benefit of his hindsight explanations, Amodeo's Motion to Dismiss and initial Declaration clearly paint a misleading picture for the Court. Amodeo's attempts to explain these falsehoods miss the mark and only serve to highlight the lack of credibility in the first sworn statements. As such, the Court should strike Amodeo's initial Declaration and the Supplemental Declaration

that attempts to whitewash Amodeo's initial filings and should deny Amodeo's Motion to Dismiss because it lacks factual support.

Respectfully submitted, this 15th day of June, 2007.

/s/ John M. Gross
JOHN M. GROSS
Georgia Bar No. 313520
jgross@taylor-busch.com
JOHN J. RICHARD
Georgia Bar No. 603989
jrichard@taylor-busch.com
RAMSEY KNOWLES
Georgia Bar No. 426726
rknowles@taylor-busch.com
*Counsel for Plaintiffs*

TAYLOR BUSCH SLIPAKOFF &
DUMA LLP
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
phone: (770) 434-6868
facsimile: (770) 434-4819

Of counsel:

Phillip W. Williams, Jr.
BRUNSON & ASSOCIATES, P.A.
301 Broad Street
P.O. Box 1189
Gadsden, Alabama 35902-1189
Telephone: (256) 546-9205
Facsimile: (256) 546-8091

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| DAVID G. CHAVIERS, NORMAN CHAVIERS, KELLIE LEDBETTER, and TOM HANCOCK,<br><br>Plaintiffs,<br><br>v.<br><br>MIRABILIS VENTURES, INC., and FRANK AMODEO, et al.,<br><br>Defendants. | CIVIL ACTION NO.<br>CV-07-0442-CLS |

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Eric B. Langley, David Burkholder, Charles Burkhart.

/s/ John M. Gross
---
JOHN M. GROSS
Georgia Bar No. 313520
jgross@taylor-busch.com
JOHN J. RICHARD
Georgia Bar No. 603989
jrichard@taylor-busch.com
RAMSEY KNOWLES
Georgia Bar No. 426726
rknowles@taylor-busch.com
*Counsel for Plaintiffs*