FILED

2007 Aug-20  PM 02:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| DAVID CHAVIERS, NORMAN CHAVIERS, KELLIE LEDBETTER, and TOM HANCOCK, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | )     Civil Action No. CV-07-S-0442-M ) |
| MIRABILIS VENTURES, INC., and FRANK AMODEO, *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This action is before the court on defendants' motion to dismiss Frank Amodeo for lack of personal jurisdiction,[1] and plaintiffs' motion to strike a portion of defendant Amodeo's declaration.[2] Defendants submitted a brief and evidentiary materials in support of their motion to dismiss.[3]

## I. FACTUAL BACKGROUND

Plaintiffs—David Chaviers, Norman Chaviers, Kellie Ledbetter, and Tom Hancock—are citizens of Alabama who jointly owned all of the outstanding interest in an entity known as "The Hancock Group, LLC," prior to the sale of that Group and

---

[1]Doc. no. 11.

[2]Doc. no. 17.

[3]*See* doc. no. 12.

its related companies to defendant, Mirabilis Ventures, Inc. ("Mirabilis").[4] Mirabilis is a Nevada corporation with its principal place of business in Orlando, Florida.[5] Frank Amodeo is a resident of Florida who, plaintiffs contend, acted as a representative of Mirabilis during the negotiation of the notes and security agreement for the sale of The Hancock Group to Mirabilis.[6]

The Hancock Group was a professional employer organization which handled human resources functions for its clients, typically small- to medium-sized businesses.[7]  In late 2005, plaintiffs Tom Hancock and David Chaviers retained Wanda Silva, of Silva Capital Solutions, to perform a valuation of The Hancock Group.[8]  During the valuation, Ms. Silva mentioned to plaintiffs that Mirabilis would be interested in purchasing The Hancock Group, and negotiations between the two companies followed.[9]  The parties agreed to a purchase price between $2.5 and $3.4 million, with $1.25 million to be paid in cash upon closing.[10]  The full purchase price was to be determined  based on The Hancock Group's financial performance during 2006, and the balance of the purchase price was to be paid through promissory

---

[4]Doc. no. 8 (amended complaint), at ¶¶ 1-4.

[5]*Id.* at ¶ 5.

[6]*Id.* at ¶ 6.

[7]*Id.* at ¶ 10.

[8]*Id.* at ¶ 15.

[9]*Id.* at ¶¶ 15-16.

[10]*Id.* at ¶ 18.

notes.[11]

During the negotiations Mirabilis made representations to plaintiffs regarding Mirabilis' financial strength and its resources in the areas of group health and worker's compensation insurance which could offer very favorable rates to The Hancock Group's clients.[12]   Since the final purchase price was contingent upon the financial success of The Hancock Group after its acquisition by Mirabilis, the representations were significant to the plaintiffs.[13]   Plaintiffs contend that, following the closing of the Purchase Agreement, Mirabilis representatives informed plaintiffs that Mirabilis did not have the group health insurance or worker's compensation plans as represented.[14]

In the absence of the purported plans, the plaintiffs contend that The Hancock Group could not lower its costs and it would, therefore, suffer a lower purchase price due to a diminished financial performance.[15]   As a result, the plaintiffs and Mirabilis entered into a supplemental agreement that tied the final purchase price to new business generated, instead of overall financial performance.[16]   The Hancock Group

---

[11]*See* doc. no. 8 at ¶ 18.

[12]*Id.* at ¶ 19.

[13]*Id.*

[14]*Id.* at ¶ 33.

[15]*Id.* at ¶ 34.

[16]*Id.* at ¶ 35.

achieved the required goals and thus became entitled to the full purchase price of $3.4 million.[17]

Plaintiffs and Mirabilis entered into negotiations for payment of the remaining balance of the purchase price.[18]  Plaintiffs assert that Frank Amodeo was Mirabilis' primary representative in these negotiations, and that he made numerous representations to plaintiffs to induce them to accept Mirabilis' terms.  Plaintiffs contend that Amodeo continually represented that Mirabilis would satisfy its contractual obligations.[19]  Plaintiffs did accept the terms and the negotiations resulted in a security agreement that called for the balance to be paid by promissory notes issued to plaintiffs.[20]  The initial payment was due on February 1, 2007, but Mirabilis did not make it.  Further, Mirabilis did not make its second payment to the plaintiffs on March 1, 2007.[21]

Plaintiffs contend that Frank Amodeo, Mirabilis, and its representatives repeatedly and falsely made representations to the plaintiffs upon which the plaintiffs relied to their detriment.  Plaintiffs contend that representations regarding Mirabilis' resources and financial strength induced them into the sale of The Hancock Group,

---

[17]*See* doc. no. 8 at ¶ 35.

[18]*Id.* at ¶ 38.

[19]*Id.*

[20]*Id.* at ¶ 36.

[21]*Id.* at ¶ 51.

as well as subsequent agreements.  It is further contended that, once Mirabilis and plaintiffs completed the initial sale agreement, Mirabilis continued to make false representations.  Plaintiffs assert that Mirabilis assumed the responsibility to pay The Hancock Group's accounts payable, and required funds in excess of those liabilities to be transferred into Mirabilis' control.[22]  In addition, plaintiffs assert that Mirabilis was habitually tardy in payment and sometimes failed to make payments.[23]  Plaintiffs also contend that, even though sufficient funds were transferred to Mirabilis to make FICA payments on behalf of The Hancock Group's clients, Mirabilis failed to make the fourth-quarter payment in 2006.[24]

Plaintiffs filed suit in this court on March 8, 2007.  They assert a claim against Frank Amodeo for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, as well as supplemental state-law claims of fraudulent inducement and fraud.[25]  Plaintiffs thus invoked both this court's federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa , based on the count in their complaint alleging violations of the Securities Exchange Act of 1934, and this court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[26]

---

[22]*See* doc. no. 8 at ¶ 42.

[23]*Id.* at ¶ 44.

[24]*Id.* at ¶ 49.

[25]*See generally* complaint.

[26]The parties do not dispute this court's *subject matter* jurisdiction.

Defendants argue that plaintiffs' claims against Frank Amodeo should be dismissed due to lack of personal jurisdiction over him.

## II. DISCUSSION

Federal district courts are tribunals of limited jurisdiction, "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. The American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "'Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication.'" *Mercantile Capital, LP v. Federal Transtel, Inc.,* 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584 (1999) (in turn quoting *Employers Reinsurance Corp. v. Bryant,* 299 U.S. 374, 382 (1937)).

When a district court's jurisdiction is at issue, and an evidentiary hearing has not been held,

> [t]he plaintiff bears the initial burden of alleging personal jurisdiction by pleading sufficient material facts to establish the basis for exercise of such jurisdiction. *Future Technology Today, Inc. v. OSF Healthcare Systems,* 218 F.3d 1247, 1249 (11th Cir. 2000). If the plaintiff has done so, the burden shifts to the defendant to make a prima facie evidentiary showing, by affidavits or otherwise, that personal jurisdiction is not

present.  *Id.*  If the defendant sustains that responsibility, *the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.  Id.*  However, the allegations in the complaint still must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  *S & Davis Intern., Inc. v. The Republic of Yemen,* 218 F.3d 1292, 1303 (11th Cir. 2000).  And if the parties present conflicting evidence, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing will be sufficient to survive the motion to dismiss notwithstanding the contrary presentation by the moving party.  *Id.*

*Mercantile Capital,* 193 F. Supp. 2d at 1247 (emphasis supplied).

## A.    Personal Jurisdiction Over State Law Claims[27]

The determination of personal jurisdiction over a nonresident defendant in the context of the diversity statute, 28 U.S.C. § 1332,  is a two-step analytical process.

First, the court must address the reach of the forum state's long-arm statute.  Second,

[i]f there is a basis for the assertion of personal jurisdiction under the state statute, [the district court must] next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a non-resident defendant.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (quoting

---

[27]It is noted that defendants challenge the personal jurisdiction of the 10b-5 claims.  Much of the defendant's argument on this issue is centered around the insufficiency of plaintiffs' 10b-5 claim.  The discussion of the merits of such a claim is reserved for a 12(b)(6) motion, not the 12(b)(2) motion which is presently before the court.  Regardless, as admitted by both parties, personal jurisdiction in federal question cases is broader than on cases involving diversity.  Since the court has found personal jurisdiction exists over Frank Amodeo on diversity, a discussion of the federal question's personal jurisdiction standard is unnecessary.

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (other citations omitted)).

"Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing Ala. R. Civ. P. 4.2(a)(2)(I);[28] *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993); *Horn v. Effort Shipping Co., Ltd.*, 777 F. Supp. 927, 929 (S.D. Ala. 1991)); *see also Investors Guaranty Fund, Ltd. v. Compass Bank*, 779 So. 2d 185, 188-89 (Ala. 2000). Thus, "the state law and due process analyses collapse into a single inquiry . . . ." *Butler v. Beer Across America,* 83 F. Supp. 2d 1261, 1266 (N.D. Ala. 2000) (citing *Brown v. Astron Enterprises, Inc.,* 989 F. Supp. 1399, 1404 (N.D. Ala. 1997)).

---

[28] Rule 4.2(a)(2)(I) of Alabama Rules of Civil Procedure provides, in pertinent part:

(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's:

. . .

(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), *so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.* [Emphasis supplied.]

Further, "[p]ersonal jurisdiction may be general, which arise [sic] from the party's contacts with the forum state that are unrelated to the claim, or specific, which arise [sic] from the party's contacts with the forum state that *are* related to the claim." *Nippon Credit Bank, Ltd. v. Matthews,* 291 F.3d 738, 747 (11th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 n.9 (1984); *Madara v. Hall,* 916 F.2d 1510, 1516 n.7 (11th Cir. 1990)) (emphasis supplied). Plaintiffs assert that this court has specific personal jurisdiction over Amodeo because his contacts in this state gave rise to the lawsuit.

## 1. Specific Personal Jurisdiction

Specific jurisdiction arises from the activities of an out-of-state defendant in the forum state that *are related* to the plaintiffs' cause of action. The specific jurisdiction analysis implicates due process "minimum contacts" principles. *See International Shoe*, 326 U.S. at 316.

The determination of whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment also is a two-part inquiry. "First, we must decide whether each defendant has established 'minimum contacts' with [the forum state]. Second, we must determine whether the exercise of personal jurisdiction would offend 'traditional notions of fair play and substantial justice.'" *Robinson*, 74 F.3d at 258 (citations and some quotation marks omitted).

### a. Minimum Contacts

The Eleventh Circuit has adopted a three-part test to determine if minimum contacts are present:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws." Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there." *Vermeulen* [*v. Renault, U.S.A., Inc.*, 965 F.2d 1014, 1016 (11th Cir. 1992), *modified and superseded by,* 985 F.2d 1534 (11th Cir.), *cert. denied,* 508 U.S. 907 (1993)]. The availability of specific jurisdiction depends on the relationship among the defendant, the forum, and the litigation. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.,* 786 F.2d 1055, 1057 (11th Cir. 1986).

*Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 627 (11th Cir. 1994). In summary, when a nonresident person (or entity) purposefully avails himself (or itself) of the laws of the forum state, courts sitting within that state are entitled to assert specific jurisdiction over that party.

It is clear that whatever contacts Amodeo had with Alabama relate to or arise out of plaintiff's cause of action. Amodeo, through his association with Mirabilis, was in contact with plaintiffs regarding their Alabama corporation and its sale to Mirabilis, and that contact is the basis of plaintiff's claims against him. Accordingly, the first part of the test has been met.

As for the second and third parts of the test, courts have held that when a

defendant purposefully directs his intentional, allegedly tortious conduct at a resident of the forum state, minimum contacts have been established, and that the defendant should reasonably expect to be haled into court there. *See Calder v. Jones*, 465 U.S. 783, 790 (1984). In *Calder*, the Supreme Court held that a California court could exercise jurisdiction over two Florida petitioners who allegedly published a libelous article about a California resident. Even though petitioners' contacts with California that were unrelated to the action were minimal, the Court found that jurisdiction by the California court was appropriate because the petitioners were the "primary participants in an alleged wrongdoing intentionally directed at a California resident." *Id.* at 790. Petitioners knew that the brunt of their alleged conduct would be felt by respondent in her own state and, "[u]nder the circumstances, petitioners must reasonably anticipate being haled into court there." *Id.* At 789.

Similarly, in the present case, plaintiffs, Alabama residents, have alleged intentional, tortious acts of fraud against Frank Amodeo, a non-resident. Plaintiffs contend that Amodeo made misrepresentations upon which they relied regarding the promissory notes, the security agreement, and Mirabilis' conduct of business. Due to these misrepresentations, plaintiffs have alleged that Amodeo was a primary participant in their claims of fraud. If true, Amodeo's conduct was intentionally targeted at citizens of Alabama, and he should reasonably expect to be haled into

court in that state, thereby satisfying the second and third prongs of the test.

Defendants argue that Amodeo's contact with plaintiffs was too limited to confer jurisdiction.  They point out that Amodeo never once came to Alabama in connection with this project.  Physical presence in a forum state, however, is not dispositive.  *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005).  "Crucial to the analysis is the element of foreseeability of the consequences of the defendant's activities.  There must be a clear, firm nexis [sic] between the acts of the defendant and the consequences complained of in order to establish the necessary contacts."  *Duke v. Young*, 496 So. 2d 37, 39 (Ala. 1986).

Although defendants argue that all of Amodeo's contacts were exclusively over the telephone, by a letter from Amodeo posted in late November 2006, and in-person meetings conducted in Orlando, Florida, the contacts must be viewed alongside the conduct alleged in the complaint.  Similar arguments have failed to defeat jurisdiction in suits involving fraud.

In *Shrout v. Thorsen*, 470 So. 2d 1222 (Ala. 1985), the Alabama Supreme Court considered whether jurisdiction was proper over a non-resident defendant in a suit involving fraud.  In *Shrout*, defendant's contacts to Alabama were limited.  Defendant had not entered the forum in connection to the suit, as all meetings between plaintiff and defendant were held outside the forum.  Defendant's only

contact directed towards plaintiff while plaintiff was in Alabama was limited to telephone calls placed by defendant and a singular letter.  The Alabama Supreme Court nevertheless found that, in the context of fraud, defendant had established minimum contacts and jurisdiction therefore was proper.  *Id.* at 1225.  The court reasoned the contacts Shrout did create, though few, played an integral role in the scheme to defraud plaintiff because they were the instances of misrepresentation upon which plaintiff relied.  *Id.*  Similarly, though they are not extensive, the contacts that Amodeo has admitted form the basis of the plaintiffs' claims of fraud.  Plaintiffs contend Amodeo's phone calls and e-mails contained the very misrepresentations which led them to accept the security agreement.  As the court in *Shrout* stated, "[w]e cannot allow a culpable defendant to manipulate our decisions on *in personam* due process to effect a shield against his improper conduct."  *Id.*

Further, in *Ruiz de Molina v. Merritt & Furman Insurance Agency*, 207 F.3d 1351 (11th Cir. 2000), the Eleventh Circuit noted that, when defendants are charged with fraud and deceit, they should have "anticipated being haled into an Alabama court should a claim arise out of their conduct."  *Id*. at 1358 (citing *Shrout* with approval).

Based on the foregoing, the court holds that Frank Amodeo does have the requisite minimum contacts with Alabama to justify the exercise of specific personal

jurisdiction over him in an Alabama court.

Because Amodeo does have minimum contacts with Alabama, the court needs to satisfy the second prong of the due process analysis: *i.e.,* whether the exercise of personal jurisdiction over Frank Amodeo in an Alabama court would offend "traditional notions of fair play and substantial justice." *Robinson*, 74 F.3d at 258.

### b. Traditional Notions of Fair Play and Substantial Justice

> A court . . . may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)) (internal quotation marks omitted). Such considerations may be used by a court to establish the reasonableness of its jurisdiction when the minimum contacts analysis reveals a weaker argument that what would otherwise be required. *Id.* at 477.

However, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* This presents a heavy burden for Amodeo.

-14-

Plaintiffs' allegations indicate that Amodeo specifically targeted residents of Alabama, and Amodeo has not presented a compelling case for other considerations that would render jurisdiction unreasonable. In fact, defendants' brief fails to address the issue of whether jurisdiction by an Alabama court would comport with traditional notions of fair play and substantial justice.

Even if this court were to engage in an analysis of the considerations listed in *Burger King*, it is unlikely that Amodeo could meet his burden. Frank Amodeo is a resident of Florida; yet, he and his company are amenable to suit in Nevada. Being haled into court in Alabama is unlikely to create the kind of hardship required to create a showing that jurisdiction is not proper when considering the fact that he obviously is willing to travel to Nevada for defense of claims that might be asserted in that state. Further, as plaintiffs point out, the State of Alabama would have a strong interest in a suit alleging fraud perpetrated against its residents. Finally, the other defendant to this suit, Mirabilis, has consented to this court's jurisdiction. In addition to serving judicial efficiency, the creation of one suit against all defendants would allow for the plaintiffs to seek convenient and effective relief.

The analysis of the fair play and substantial justice portion of personal jurisdiction imposes a burden on defendant Amodeo—a burden that was not shouldered. Accordingly, the exercise of personal jurisdiction by this court over

Frank Amodeo does not offend traditional notions of fair play and substantial justice.

## IV. CONCLUSION

Based on the foregoing, it is ordered defendant's motion to dismiss is DENIED

and plaintiff's motion to strike is DENIED as moot.

DONE this 20th day of August, 2007.

_____
United States District Judge